States of America, X-REL, Stephanie Schweitzer v. Canon, Inc. et al. Mr. Reifel, is that correct? Yes. Okay. May it please the Court, good morning, Your Honors. My name is Ross Reifel, and I represent the appellant, Stephanie Schweitzer, a relator for the United States government in her action against Canon et al. We are here today to appeal a district court's granting of the defendant's motion for summary judgment. We recognize the difficulty that exists when appealing a district court decision. We are respectful of that decision, but we do believe there's a question of application of the statutes that were used. We believe that the question of application of the statutes surround the Government Action Bar and the Public Disclosure Bar. We also believe Ms. Schweitzer pleaded for sufficient under the FCA. We're going to start with the Government Action Bar. As you guys know, it's 31 U.S.C. section 3730E3. I'm not going to read the entire— Before you start on your argument, when an appellant doesn't file a reply brief, then appellee arguments aren't responded to. So I have two questions. Do you disagree with the appellee's assertion that your client is no longer asserting the original source, Doctor? You disagree with that? I know, but can you tell me where in your brief you made that argument? We didn't make a reply brief. Did you even argue that in your principal brief? We argued the Public Disclosure Bar, which is— So if it's not in your principal brief and you didn't file a reply brief, how would we have that in front of us? So it's abandoned? That particular issue is— My second question is, they say that the Public Disclosure Language Amendment in 2010 is immaterial based on— Yes, sir. Okay. Thank you. So we're going to start with the Government Action Bar. There it states that an action—excuse me—in no event may a person bring an action under Subsection B which is based upon allegations or transactions which are the subject of a civil suit or administrative civil money penalty proceeding in which the government is already a party. And obviously that's what we're going to argue is already a party issue. The current case is not based on a current active case. We really got a timeline issue here and it's been argued by the appellee on the time frames and we disagree with their argument. Current things—there are current agreements to the time frame, but the fact of the matter is the previous case was filed in 2008, had to do with transactions that occurred from 2006 to the end of 2008. A settlement agreement was entered into 2009. That stopped the case. A settlement stops the case. The settlement was not approved until 2013, but the case stopped. The argument all had to do with the settlement agreement. But regardless, the case is no longer active and when we filed this petition in 2016, this case was not active. The government has not intervened and they don't have to intervene. Quite frankly, government intervenes 18 to 22 percent of the time. They rely on the relator to help them do their job, but they did file a statement of interest because they are an interested party. Government also filed many objections to motions that were filed by the appellee. But the government has many options. One of the options is they can move to dismiss the relator's complaint either because there is no case or the case conflicts with significant statutory or policy interests of the United States. They have never done that. They have objected to the motions for summary judgment. They have objected to the decision by the district court. In those objections, and what we have also stated, is they were not a party to this particular case and it was not a live case when this was filed. The district court quoted the Bennett case, which stipulates that once a party, always a party. Once the U.S. government intervened in the previous case, they're a party really in perpetuity. But that, we disagree with Bennett. It was a dissented ruling, it was two to one. If we agree with you on that, that doesn't mean you prevail here though. No, Your Honor. I mean, I'm just saying that the rest of the district court's rulings, I don't think that gets you where you need to be, does it? Well, I'm not there yet. Okay. But you're hearing our difficulty. Let's just jump to what Judge Hainan focused on, which is she makes an earlier complaint. This one looks really derivative. It's even alleging as a false statement the same GSA contract. How isn't it based on similar to more of the same? Okay, and that is a good question, Your Honor, and let me see if I can clarify. One of the contracts, and actually a couple of contracts are the same, but they're multiple contracts, and it was argued that it was multiple contracts that were different. Additionally, Hainan was not in the first case. They weren't even anywhere in the picture in the first case. It was OSE, which is a different defendant. The contracts, Hainan purchased OSE, and there's an argument whether it was a purchase or a merger, and that's a whole other issue. But they purchased them, and when they purchased them, they novated the contracts, and they stepped into OSE's shoes. They're required to honor that contract. These contracts were never changed. They were never modified. So they're bound by what needs to be done with those contracts, and even though the previous case had to do with OSE and similar contracts, you're now dealing with a different defendant. You're dealing with different transactions. You're dealing with a different time frame, which is different from the first case. Can you point to particular, and I tried to make a chart of this, but maybe, can you help point to particular contracts that are different, that were not the subject? I understand you're saying that, well, because it's been novated with a different party, it's not the same contract. That's an interesting point, but put that to one side. Are there specific, different contracts that were not at issue in the prior litigation? That was in our brief, Your Honor, and I do not have that page number in front of me, and I do apologize. So they were never, ever looked at as part of the scheme before? No, Your Honor. They were different than the first contracts in the first case. Okay. But the scheme is the same scheme? Fraud is fraud, yes, Your Honor. But there's a slight difference. The first case had to do with, really, trade-ins. This case has to do with Trade Agreement Act, as well as Price Reduction Clause. And Trade Agreement Act stipulates or states that any GSA contract has, anything that's produced has to be made in a TAA-compliant country. Canon's producing equipment in China, which is not a TAA-compliant country by any means. They, OSE did this. So that ground didn't exist in the prior lawsuit? Correct. Because the other manufacturer was in a TAA-compliant. They were stating they were producing in the Netherlands. So that's a completely different situation, then, if that's the claim. Was that the claim, though? There was a claim that they were also producing some of their equipment in China at that time. Is that part of your lawsuit? And did you bring that to the magistrate judge and the district court's attention? That was what we filed, yes, Your Honor, that they were producing in China, yes. It wasn't about this trade-in point. It was about the location of the production. I'm sorry, I didn't hear that first part, Your Honor. It wasn't about the trade-in or the trade, it was about where they're made. Yes. And that was clearly stated. It was about, yes, Your Honor, it was about manufacturing and the price reduction clause. The manufacturing had to be in a TAA-compliant country, and the price reduction clause states that the U.S. government's supposed to get the lowest price on the products that are purchased through their institution. Well, wasn't that in both cases? The price reduction clause is in both cases, yes, Your Honor. And that they were, the allegations were that, among other things, they were made in China or in other prohibited countries. Was that in both cases? Yes, Your Honor, it was. And I wasn't involved in the first case, but to, and I do understand that it was, but while it was, it had to do with different parts that were going on, and it had to do with a different defendant. Okay, you, I thought you just told me that that wasn't an issue in the first case because they were made in the Netherlands, and that's a compliant country. OSE was in the Netherlands, and they said that they produced in the Netherlands. There was some, there was some allegations that they were producing in China. Okay. Canon is producing in China. So it's not just allegations, it's absolutely the situation. They filed SEC filings to that effect. So when it comes to the government action bar, we, we feel that the, already a party is, is not a proper section to look at. It would prevent relators to file other cases. For example, if somebody had been a party to a lawsuit with the United States government, then they could commit fraud down the road because, hey, we've already been there, done that, and you can't bring any more claims against us. I think the, it's too finite of a reading for the government action bar. The other reason we're here is to discuss the public disclosure bar, and we've got a unique viewpoint. The court shall dismiss an action or claim under this section unless opposed by the government if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed. Well, we're focusing on unless opposed by the government. The government did oppose this. The government opposed it while they filed their opposition under the government action bar, and they discussed it in, in detail. The government, the government wouldn't have done that if they couldn't, if they didn't believe it would have automatically gotten dismissed under the public disclosure bar. This, the, the public disclosure bars, unless opposed by the government, it doesn't say only under this section. It doesn't say it has to be opposed under the public disclosure bar. It just says opposed by the government. The government filed an opposition to this decision. We feel that, that was enough to defeat the public disclosure bar. Finally, we do believe that Ms. Schweitzer's pleadings were sufficient to assert an action under the False Claims Act. There's been some discussion and argument that she did not bring enough evidence forward to defeat the motion for summary judgment. A defendant or any party doesn't have to marshal all their evidence at the time of the complaints being filed. Evidence is usually exchanged during discovery. While the motion for motion, motion for summary judgment was filed, we do believe that her pleadings were sufficient to overcome that in the fact that the complaints specifically stated the issues at hand, which had to be with the price reduction clause, the Trade Agreements Act. The government also believes that the sections were pled enough to defeat the motion for summary judgment. And we believe that under these issues and what we discussed here today that we respectfully request that the motion for summary judgment willing be remanded back to the lower court. Did her declaration that you attached to the motion to oppose say anything about canon? The declaration that was Ms. Schweitzer's declaration, that had to do with canon, it had to do with the previous suit and it had her settlement in there. And it discussed the settlement agreement and why it was different than the current facts. It had to do with OSE, it had to do with a different time frame. It didn't discuss canon. It did not discuss canon. Thank you, Your Honors. I appreciate it. Thank you. We have your argument. And you have saved time for rebuttal. Mr. Jones? Good morning, Your Honors. May it please the court. My name is Tyree Jones and I'm counsel for LA's Canon USAID. Canon USAID is the only named defendant in this action who has ever served or made an appearance in the action. On behalf of Canon USAID, we ask that this court affirm the decision of the district court granting summary judgment in Canon's favor on the FCA claims asserted by Ms. Schweitzer. Finding properly in our view that the public disclosure bar bars that action from proceeding because the allegations maintained in this action by Ms. Schweitzer were substantially similar to those asserted by her in the OSE action. And therefore proceeded to satisfy the three-step test that the circuit announced in the Jamison decision, which is whether or not the allegations in the instant case are based upon those in a prior key tam action, here they are. And whether the information in this case is substantially similar to information that was previously publicly disclosed, which was found to be the case here and we maintain that was the correct finding. Was it ever publicly disclosed that Canon was not complying with the provision to make the product in the proper countries under the contract and the GSA rules? Our position, Your Honor, is that it was publicly disclosed and indeed. How so? Where? It was disclosed in terms of the fraudulent scheme that Canon is alleged now to have engaged in. It was the identical fraudulent, alleged fraudulent scheme that was asserted in the OSE action. They weren't making it at the same factory in some secret manner together or anything, were they? That's not the allegation. That's not the allegation at all. In fact. It's a totally different company in where they make their product. So how can that be publicly disclosed in the prior lawsuit? I don't understand that. The critical distinction here we find, Your Honor, for the application of the public disclosure bar and that we think the district court properly applied is focusing on the allegations of the alleged fraudulent scheme to sell copiers and services to the federal government, which Ms. Schweitzer has alleged is what OSE did and then what Canon did after it acquired OSE and to use her allegations, adopted and expanded on that fraudulent scheme. But as is set forth in the record, the government contracts involved, the GSA contracts 60M and 2B are the identical contracts that were at issue in the OSE action. And indeed, in Ms. Schweitzer's allegations in her second amended complaint in this action, she alleges that Canon in 2009 had listed almost its entire inventory of products on the 60M contract. And that's also because while Ms. Schweitzer acknowledges that there was a public announcement of the acquisition in 2012, she also alleged and asserted at the district court that Canon's relationship with OSE predated 2012. And so. But Canon's never settled out for using copiers made in China with the GSA. I mean, that's never. That, because that all was subsequent. It was all on the same timeline, Your Honor. If you look at the timeline in this case and what Ms. Schweitzer has alleged, the 60M and the 2B GSA contracts span by her own allegation from January 1, 2019. I'm sorry, January 1, 2009 through January 1, 2019. So are you saying the settlement with the prior party covers these acts? It doesn't. It doesn't. In fact, the settlement was merely as the government in defending its resolution of that action against Ms. Schweitzer's objection to that settlement made very clear that it was merely compromising those claims because it saw legitimate risk in improving any trade act agreement, noncompliance, or price reduction. I just don't see how it's the same scheme if it's another product with a different country with, I mean, or maybe the same country that were not where they were supposed to be but where they were. I don't understand how that's the same scheme. It may be the same method, but if it involves an entirely different party, help me, what's the best case on that? I think here, Your Honor, there are two cases that really address the point. One is USXRailFree where this circuit announced that if any aspect of the allegations are based on publicly disclosed information as we believe was demonstrated here in the nature of the scheme, then the entire action should not proceed under the public disclosure bar. And here, what we have is- Do you have a comment, though, on the other part that the magistrate judge found? You're not arguing that for an alternative basis for us to affirm today, are you? No, we're not. Your horse, your riding, is public disclosure, right? I'm focused on the public disclosure bar. I'm prepared to address the government action bar and whether plaintiffs sufficiently pled materiality as we've addressed in our briefs. But that was not the ultimate basis on which the district court- Right, the district court didn't rule on it, but you're not urging us to rule in the alternative if we don't agree with you on public disclosure that we should rule on the government point. I am, Your Honor. You are arguing that. If the court is not inclined to find that the public disclosure bar applies here, notwithstanding the identical allegations that are made in both the original complaint she filed in this action and the action she filed in the district court for the District of Columbia in the OSE action, then certainly we believe, as the magistrate judge found, that the government action bar is still implicated by the overlap of the fraudulent scheme and the overlap of the alleged noncompliance with the Trade Agreements Act and the price reduction clause. I interrupted you. Before you leave the public disclosure bar somewhere, would you address counsel Opstett's statement that I think there's a clause in there unless opposed by the government or something like that? Certainly, Your Honor. And it sounded to me like that that's limited to that defense and doesn't apply. The language of 3730E4 does include unless opposed by the government with regard to the public disclosure bar. Here, though, however, the record is clear that the government very expressly stated that it was taking no position on the public disclosure bar at all. It filed an objection to the magistrate's report and recommendations, again, staking out its position that the government action bar should not be a basis for precluding this action. It did so when it filed its statement of interest as well. But again, in both filings, the government was clear in stating that it was taking no position on the public disclosure bar or any other aspect of the motion that was pending, and indeed that it chose not to file any other more substantive objection or briefing with regard to the district court. We submit underscores that it is not involved at all in the public disclosure bar issue and should not be used as a means to bootstrap its way up to bar the application of the public disclosure bar here. Basically standing for the public disclosure bar disposing of this case. Initially, just as the district court judge did, Your Honor, I mean, we, of course, thought the magistrate judge appropriately applied the government action bar as well, but the district court saw fit not to address the . . . or saw no need to go further to the government action bar because it found the application of the public disclosure bar precluded the action. And if we agree, we do not need to address the other bar? If you agree and affirm on the public disclosure bar basis, our position is you need not address the government action bar or the other elements that . . . because as long as the public disclosure bar finding is affirmed, then there's . . . that ends this action that has now been pending for almost 15 . . . since 2006, 15 years. And the only distance or difference here is after the settlement was finally approved, after Ms. Schweitzer objected to it, demanded a fairness hearing, and prevailed at the D.C. Circuit Court of Appeals, which then remanded the matter to have the settlement have a fairness hearing, that's why that action continued through 2013. The government was a party throughout all of that and indeed was a party vigorously defending its decision to compromise the OSE action. And during that entire time period, certainly from 2009 forward, Cannon was involved as the parent, if you will, or the acquiring entity of OSE. And the government knew that. There has been nothing presented to the district court by Ms. Schweitzer that sets the government on any new or different trail of fraud, which is really the rationale underpinning both the public disclosure bar and the government action bars. Okay, I still . . . you were going to give two cases and I interrupted you and I apologize. I'm sorry. No, you didn't do anything. I'm apologizing to you. Can you maybe want to give those two cases because I still don't see that different copiers made at different times pursuant to a different novated contract or perhaps some other contracts are the same scheme. It seems like two different companies with two different schemes to me, so help. Well, one, I cited the Freed case and that's because it also discusses that a name change or a party change that in many respects is only a change in name and is an ephemeral distinction, if you will, is not enough to defeat the application of the public disclosure bar. But this is a totally different kind of copier, right? This is not . . . is it the same exact copier that just has a different label that was made at the same factory or is this totally a different copier? Actually, the allegation that Ms. Schweitzer made is that it's not just a particular copier, it's the component parts of any copier. Right, that's what I'm saying. Are they interchangeable, these exact parts, or does Canon have certain kinds? And the other company had certain kinds. Are these the same thing with just a different label on them or are they actually physically different but similar copy parts? Because this arose in the pleading context and looking at what Ms. Schweitzer has alleged for the past 15 years, what she has alleged is the component parts of all the copiers, including those made by OSE, including those manufactured by Canon, which she alleges Canon put on the 60M contract beginning in 2009, all were subject to Canon and OSE's noncompliance with the Trade Agreements Act and the Price Reductions Clause. That's what Ms. Schweitzer alleges is the fraudulent scheme for payment, notwithstanding that she doesn't link up in terms of materiality whether the government had a practice of denying payment for such noncompliance. Here, the facts that were publicly disclosed is that the government did intervene, did become a party, and defended its resolution of all of those same allegations that are raised in this case. And that's why we submit, Your Honor, that we are talking about that the overlap of the factual allegations, the overlap of the government contracts involved, the overlap of the entities involved during this timeline are all of which implicate the public disclosure bar and that Ms. Schweitzer acknowledged in her submissions below that she was not the original source of these new allegations against Canon and then waived it by not arguing it in her opening brief here is why the district court properly found the public disclosure bar precludes this action. I just don't see that the settlement in the other case tells us that Canon was at some plant somewhere manufacturing these parts. It doesn't tell us anything about that because Canon's not manufacturing parts in the settlement. And in the allegation, it wasn't Canon manufacturing parts in China. So nobody's ever brought publicly that Canon was manufacturing parts in China until this case. I guess I'm having trouble with that. And I guess where I still land, Your Honor, is the timeline. The timeline, even as I heard counsel argue on Ms. Schweitzer's behalf that the action stopped in 2009 and this is totally different conduct, her own allegations implicate Canon's involvement as early as 2009 with the exact same allegations, that you're selling copiers and services that have component parts made in noncompliant countries. It's not limited just to China. It's noncompliant countries. And that you are selling them without giving the government the best terms as required by the price reductions law. And it's a totally different thing. Well, you're correct that the only change that occurred was that Canon acquired whatever the name of that company was. And that the procedure of acquiring parts and assembling was the very same throughout this. That's what Ms. Schweitzer alleges, Your Honor. That's not what I think. I thought that they have a different plant. They're not manufacturing them at the same plant. We were just talking about that. The complaints allegations don't get into that level of detail. The second amended complaints allegations allege that Canon, by acquiring OSE, adopted and expanded the fraudulent scheme she alleged occurred under OSE, which became the subject of the first statute. I guess I still don't understand. Are they selling the OSE parts with the Canon name on them, or are they selling Canon parts that they had either been selling all along or started their new plant with selling Canon parts? Are they selling the OSE parts, or are they selling their own parts? I think here, Your Honor, that that distinction, if any, would be immaterial to the allegations in the complaint. Can you help me? Because to me it's not immaterial. Understood. What I mean by immaterial is whether it now has Canon's name on it. Let's say that inventory that she alleges Canon put on contract 6DM in 2009 has Canon's name on it. She's still alleging that that copier has component parts made in noncompliant countries. Whether or not the OSE copier sold in 2009 or 2010 has OSE's name on it. She is alleging both in the OSE action and in this action that it was made with component parts from noncompliant countries and that therefore that is what was perpetuating this fraudulent scheme. And all of that information was already in the public domain via her filings in the OSE action. She works for OSE. She did. She reveals the fraud. She splits $228,000. It's settled. Then she files another one, verbatim language from the first complaint, and the district court said, looks derivative, looks based on. It's not identical maybe, but it's substantially similar. End of story? That's your argument? It is, Your Honor, with regard to the public disclosure bar and indeed also the government action bar. Okay, and so we don't know the answer to my questions. Is that right? Nobody knows the answer to my questions. I don't, Your Honor. Whether or not the copier has Cannon's name on it or OSE's name. Well, whether it's totally different parts or is it the same universe of parts coming from the same place with just a different name on them? Or are they a different place? So they were also doing the separate scheme. They weren't in cahoots together. It's not just the same continuation of the OSE. It's Cannon itself doing it. Again, the reason I don't think that's a distinction with the difference is because the allegation is that the component parts are what is noncompliant, whether it's got Cannon's name on it or OSE's and notwithstanding their successor court relationship. And the allegations that are before the court that she made made no distinction about the factories or who produced those component parts. That's correct, Your Honor. Her allegations talk more generally about the component parts being made in noncompliant countries, one example of which was China. But there are other countries under the trade agreements. Once Cannon acquired that company, they didn't change anything. Not by her allegations here. That's what I'm referring to. Other courts say that the 2010 language really is the same thing, and opposing counsel has said he's not saying it isn't, but the word change is sort of different, right? Based on this would sound insanely based on it. It's totally derivative of her knowledge from the prior employer. One might say it's not substantially similar because there's a new acquiring company, but they haven't asserted and most of the circuits seem to say that the language change doesn't alter the analysis, right? I don't think at the end of the day the language change materially alters the analysis. You still have to look at the evidence presented in a Rule 56 motion such as we had here. And, again, if you do that, looking at the evidence she presented, she was unable to raise any triable issue on the question of whether or not her allegations in this case were based upon or substantially similar to those that were the subject of the public disclosures that arose out of the OSEA action and her challenge to the settlement in that OSEA action, which were the subject of media coverage. And, indeed, as I heard counsel mention, additional information she alleges in her second amended complaint here is actually drawn from public SEC filing, so additional information that had been publicly disclosed as well. You've used your time, counsel. Thank you. Thank you, Your Honor. You've saved time for rebuttal. Yes, Your Honor. Thank you. Did you only make these broad general allegations, not specifically talking about the different parts and things? The allegations have to do with the contracts and how things are manufactured and produced in regards to those contracts. We did not allege part 402 of a particular copy machine is falling within those misguided or production issues. So, yes, they were more broad allegations, Your Honor. Why isn't it just a name change then? Well, because the contract, and counsel had mentioned 2009 several times, the allegations are from 2010 to 2016. So the settlement ended at 2008 and has nothing to do with 2009 at this point. But the contracts which were novated, and, again, not every contract was novated. There are other contracts. State that it has to be in a TAA-compliant country. China is not one of them. But, yes, there are many countries that are within that realm and there's many countries that are not. We're mentioning China because that's the biggest one. It's not just a name change because OSE and Canon are different. OSE was not Canon. Canon was not OSE. When the settlement happened, Canon was not mentioned. Whether they were involved or not, Canon was not in the settlement agreement. Canon was not mentioned in the settlement agreement. Canon was not part of the first suit. Is Canon in the SEC disclosures? Yes. And why isn't that public? Well, SEC filings have to be public. No, but why doesn't that get your case? Because we didn't rely on the SEC filings when we filed this. It's just there. It wasn't used to file this complaint. It's just information that happens to be there, which would have been exchanged during the discovery process anyway. Ms. Schweitzer, while she worked for OSE, and as Judge pointed out, these are the same allegations from the same contracts. Fraud happened with OSE. Fraud's happening with Canon under the same contracts. Ms. Schweitzer is very familiar with those contracts. I'm not going to get into the original or later position since we waived that. But it's not just a name change because the defendants are different. They're different. They're different companies. They're different everything. They weren't in the first suit. They're in the second suit. It's not just a name change. And their entities are different. Do you have anything further, sir? No, Your Honor. That was it. Thank you. We have your argument. We appreciate both counsel's argument today. Thank you, Your Honor. I appreciate your time. Thank you. Have a great day.  Thank you, Your Honor. Thank you.